IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br>v.                                                            )<br> )<br>WAYNE CLYDE TERRY                    ) | Case No.: 3:14-CR-408-WKW<br>[wo] |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  The defendant, Wayne Clyde Terry, ("Terry" or "Defendant"), was charged in an indictment on July 10, 2014, with one count of conspiracy to possess with intent to distribute 500 or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  *See* Doc. 1.  Pending before this Court is the Defendant's *Renewed Preliminary Motion to Suppress Statements* (Doc. 239, filed September 4, 2015), and the *Government's Opposition to Defendant's Preliminary Motion to Suppress Statements (Doc. 239) and Motion to Seal* (Doc. 241, filed September 10, 2015).

The Court held an evidentiary hearing on the motion on September 14, 2015.  Based on the evidence presented to the Court, arguments of the parties, and for the reasons set forth herein, the Magistrate Judge recommends that the *Renewed Preliminary Motion to Suppress Statements* (Doc. 239) be **DENIED**.

## II.  FACTS

Lee County Sheriff's Deputy Casey Fuller, "Fuller" testified that on September 21, 2013, he received a call to respond to the scene of a high speed chase.  At the time, Fuller was a Police Officer with the West Point, Georgia Police Department on assignment to the DEA Task Force.  Fuller came to the scene at approximately 9:30 p.m. and discerned from the patrol officers the events preceding his arrival on the scene. Fuller learned from the patrol officers that Terry was in the front passenger seat of a truck driven by another person that law enforcement believed to be a narcotics trafficker.  A high speed chase of the truck began when law enforcement tried to stop the truck in West Point, Georgia.  The chase went from West Point, Georgia into a rural portion of Chambers County, Alabama and back into Georgia.  The chase traveled about 15 miles and ended when the driver lost control of the truck.  During the chase, bags of  methamphetamine were thrown from the passenger window of the truck.

Fuller was at the scene of the wreck about and hour and a half as he and other officers processed the scene.  Terry and Fuller arrived at Fuller's office in the West Point Police Department at approximately 10:30 p.m.  Fuller testified that he gave Terry a form which outlined Terry's rights against self incrimination.  Fuller said that Terry read the form and Fuller reviewed the form with Terry.  As Fuller advised Terry of a given right, Terry initialed the form to indicate his understanding of the right.  After Terry completed reviewing the form with Fuller he signed the form and acknowledged his understanding

of his Constitutional rights. After Terry signed the form, Fuller asked Terry if he would answer some questions. In sum, Terry asked Fuller how it would benefit him to make a statement. Fuller responded that the authorities might take his statement into account in the resolution of Terry's case. Terry indicated he had other interactions with law enforcement in other matters and he understood how the game was played. Fuller asked Terry various questions about Terry's involvement in the incident. The interview lasted approximately an hour and a half. According to Fuller, no force, threats of force, promises or inducements were used to get Terry to make a statement. Fuller testified that Terry seemed, in his opinion, to understand the circumstances leading to his arrest, his interview questions and the events surrounding his arrest. Terry indicated on the form he had a 5th grade education, but Fuller concluded from his observations that Terry understood that he did not have to answer questions and that Terry thought answering the questions was what Terry deemed to be in his own best interests. Terry told Fuller he was not under the influence of drugs or other substances before Fuller asked questions about the incident.

At the hearing, Terry argued that he was under the influence of drugs and that his low IQ prevented him from making a knowing and intelligent waiver of his rights against self incrimination. Terry presented testimony from his 18-year-old-daughter, Heaven Terry, "H. Terry", that she was with her father on September 20, 2013 and the four or five days preceding his arrest. According to H. Terry, her father used methamphetamines

each day he was with her and that Terry was under the influence of methamphetamines when he left on the evening of September 20, 2013. On cross, H. Terry said she never saw her father ingest the methamphetamine, but she saw behavior consistent with the usage of methamphetamines. H. Terry said she did have conversations with her father about routine matters prior to his departure from the house and those conversations were essentially unremarkable.

### III.  ISSUES

Terry raises one issue for judicial review:

(1) Whether the Terry made a knowing, voluntary and intelligent waiver of his rights against self-incrimination.

### IV.  DISCUSSION

First, the Magistrate Judge examines the statement by Terry to determine whether the statement was voluntary. Whether the statement was voluntary hinges on whether physical violence or other deliberate means were directed by law enforcement towards Terry in such a manner as to break his will. *Colorado v. Spring*, 479 U.S. 564, 573-574 (1987) (quoting *Oregon v. Elstad*, 470 U.S. 298, 312 (1985). The testimony which the Magistrate Judge credits indicates that Fuller adequately explained to Terry his rights against self incrimination. Terry acknowledged verbally and in writing to Fuller that he was willing to answer questions. During the interview Terry was coherent and engaged in normal conversation with Fuller. Immediately before answering questions, Terry said

he understood how the game was played because he had previous experience with the criminal justice system.  Nothing the Magistrate Judge finds credible indicates Terry did not understand the implications of making a statement or the circumstances leading to his arrest.  No promises, force, violence or intimidation were used by anyone to obtain a statement; hence, the Magistrate Judge deems the statements given by Terry were voluntary.

Finally, the Magistrate Judge examines the statements of Terry to the police to determine whether they were the product of a knowing and intelligent waiver of his rights against self incrimination.  To determine whether Terry made a waiver which was knowing and voluntary, the Magistrate Judge simply must discern whether Terry understood he could choose to say nothing, and if he did speak, those statements could later be used against him. See *Spring*, 479 U.S. at 574.  The totality of the circumstances surrounding the statement guides the Magistrate Judge's view of Terry's statement. *Fare v. Michael C.*, 442 U.S. 707, 724-725 (1979); *United States v. Bernal-Benitez*, 594 F. 3d 1303, 1317-18 (11th Cir. 2010).

The undisputed evidence which the Magistrate Judge credits, indicates Fuller told Terry, orally and in writing, that he did not have to make a statement and any statements that Terry made could be used against Terry.  Further,  the Magistrate Judge credits Fuller's testimony that Terry appeared to understand the circumstances surrounding his arrest and the legal predicament confronting Terry.  The Magistrate Judge finds that Terry

likely made the statement in hopes that his cooperation by making a statement would enure to his benefit.

Terry points to his lack of education, low intelligence and his physical condition as factors which indicate his statements were not knowing or voluntary. Terry underwent a psychiatric examination in the Bureau of Prisons (Doc. 209). The examiner concluded that Terry is competent to stand trial. The Bureau of Prisons psychiatric examination of Terry indicates Terry indeed has a grade school education, a low IQ score, and a lengthy history of substance abuse. While the Magistrate Judge does conclude that each of these factors are present in defendant Terry, none of them, alone or in combination, are sufficient to warrant suppression of the statements.

The Magistrate Judge credits the testimony from Fuller that in his law enforcement career he has seen more persons than he can count under the influence of drugs and alcohol and that Terry was not, in Fuller's opinion, under the influence of any substance. When he gave the statements, Terry appeared to Fuller, to understand the circumstances leading to his arrest and the legal situation confronting Terry. Fuller testified that the tone of the encounter was conversational. While Terry may have been drowsy prior to Fuller's arrival on the scene, by the time Fuller questioned Terry, Terry was by all accounts, normal in demeanor during the relatively brief interview. The Magistrate Judge finds that no credible evidence indicates Fuller was under the influence of narcotics during questioning. While H. Terry indicates she believed her father did not sleep and used

methamphetamine during the 5 days leading to his arrest, H. Terry admitted she did not actually see her father ingest drugs.  The Magistrate Judge does not find the testimony from  H. Terry probative.  To the extent Terry may have been under the influence of drugs prior to giving a statement, the Magistrate Judge does not find the influence was sufficiently great enough to warrant suppression of the statements.  *United States v. Sledge*, 546 F. 2d 1120 (4th Cir. 1977), *United States v. Poole*, 495 F. 2d 115 (D.C. Cir. 1974).

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendants' Renewed Preliminary Motion to Suppress Statement (Doc. 239) be DENIED.

It is further ORDERED that the parties file any objections to this Recommendation on or before **October 5, 2015.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on

appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

    DONE this 18th day of September, 2015.

                                /s/Terry F. Moorer
                                TERRY F. MOORER
                                UNITED STATES MAGISTRATE JUDGE